## AUTREY v. COLLINS.

(Court of Civil Appeals of Texas. Texarkana. Nov. 24, 1913. On Motion for Rehearing, Dec. 18, 1913.)

1. LIBEL AND SLANDER (§ 112*)—ACTIONS FOR LIBEL—SUFFICIENCY OF EVIDENCE.

Evidence, in an action for libel in publishing a statement during plaintiff's campaign for state senator, that he had not paid a certain note given by him to defendant *held* to sustain a finding that the debt evidenced by the note had been satisfied at the time, and that both plaintiff and defendant so considered it.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 325–341; Dec. Dig. § 112.*]

2. BILLS AND NOTES (§ 429*)—PAYMENT.

A note for $200 was satisfied and discharged if the maker afterwards presented to the payee a bill for $200 for services in satisfaction of the note and requested that the note be returned, and the defendant impliedly acquiesced in such means of payment, though the note was not returned.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 2168–2172; Dec. Dig. § 429.*]

3. APPEAL AND ERROR (§ 499*)—BILL OF EXCEPTIONS—EXCLUSION OF EVIDENCE.

A bill of exceptions to the exclusion of evidence, which does not state what the objection to the evidence was, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2295–2298; Dec. Dig. § 499.*]

On Motion for Rehearing.

4. APPEAL AND ERROR (§ 835*)—REHEARING —QUESTIONS CONSIDERED.

An objection to an instruction, in an action for libel, that it erroneously submitted certain publications as a ground for recovery because the petition did not justify such submission cannot be first raised in a motion for rehearing on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3241–3243; Dec. Dig. § 835.*]

Appeal from District Court, Tyler County; W. B. Powell, Judge.

Action by V. A. Collins against R. L. Autrey. From a judgment for plaintiff, defendant appeals. Affirmed.

J. A. Mooney, of Woodville, and Lane, Wolters & Storey, of Houston, for appellant. J. A. Harper and Joe W. Thomas, both of Woodville, V. A. Collins, of Beaumont, and H. W. Vaughan, of Texarkana, for appellee.

HODGES, J. The appellee sued the appellant to recover damages, both actual and exemplary, resulting from certain alleged libelous publications made by the appellant concerning the appellee, during the race of the latter for the state Senate in 1910. We here copy from appellant's brief the substance of the allegations of the petition:

"Plaintiff alleged that he was a practicing attorney residing at Beaumont; that on or about September 1, 1905, defendant employed him in a certain suit, involving the title to a tract of land in Hardin county, Tex., in which the defendant was interested; that in pursuance of his employment, he, in company with the defendant, made a trip to Sherman, and upon his return to Houston from Sherman, on December 5, 1905, procured a 15-day loan of $200 from the defendant, and executed therefor his promissory note, due 15 days after date; that in further pursuance of his employment he made two trips to Louisiana, and gathered sufficient evidence to ultimately defeat the action; that upon the completion of the work contemplated by his employment he rendered to the defendant a bill for his services about December 15, 1905, in the sum of $200, which he alleged to be reasonable, and which he also alleged was in full settlement and satisfaction of said $200 note; that the defendant

never returned the note to him, and did not thereafter demand payment of the same; that the $200 represented by the said note was the amount he charged the defendant for the services rendered, and said amount was all the defendant had ever paid plaintiff for said services.

"It was further alleged that the plaintiff was a candidate for the office of state senator from the Fourteenth senatorial district of Texas, in the primary election held July 23, 1910; that the defendant wickedly and maliciously, intending to injure him in his good name, fame and credit, and to bring him into public scandal, infamy, and disgrace amongst his neighbors and all good and worthy citizens of said senatorial district, and to cause him to be suspected and believed by his said neighbors and other citizens to have been guilty of dishonesty and unfit for the office to which he aspired, published and circulated, or caused to be published and circulated, in the counties which comprised said district, certain libelous matter, as follows, to wit:

" 'His Bluff Is Called.

" 'At San Augustine, on the sixth day of July, 1910, Collins said in a speech that if it could be proven that he owed a saloon keeper or brewery any money he would withdraw from the race. He is now called on to prove that it has been paid or make good his bluff.

" ' "$200.00 Houston, Texas, Dec. 5, 1905.

" ' "Fifteen days after date, for value received, I, we, or either of us, promise to pay to the order of R. L. Autrey, two hundred dollars at their office in Houston, Texas, with eight per cent. interest per annum from date until paid.

" ' "And in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount of ten per cent. on the principal and interest of this note shall be added to the same as collection fees. This note is one of a series of notes, and in event default is made in the payment of this note at maturity all remaining notes shall be and become due at once at the option of the holder.

" ' "No. ——— Due ———. V. A. Collins.

" ' "Address."

" 'R. L. Autrey is secretary and manager of the Houston Ice & Brewing Company of Houston, Texas. Collins has never paid this note and it is now in the possession of Beaumont Enterprise. He cannot produce one single circumstance of proof that he ever paid it.'

"Also:

" 'Bulletin No. 2.

" 'Collins Borrows from Brewery.

" 'In 1905 Collins approached R. L. Autrey, secretary and managing officer of the Hous-

ton Ice & Brewing Company of Houston, Texas, and from him borrowed $200.00, giving his personal note; which note is long since due and unpaid.'

"Also:

" 'Houston Ice & Brewing Co. Incorporated 1901. Manufacturers of Richilieu Beer. High Class Beers Exclusively. Houston, Texas, July 13, 1910. Mr. H. B. Whitmeyer, Cleveland, Texas—Dear Sir: Your letter of July 11th, addressed to the Houston Ice & Brewing Co., has been received by me. Mr. V. A. Collins owes me $200.00 on a note loaned him in 1905. This note is past due long ago and not paid. Yours truly, R. L. Autrey. A—RH.'

"Also:

" 'Houston, Texas, July 19th, 1910. J. J. Fenn, Cleveland, Texas. V. A. Collins has never paid me anything on his note, and never rendered any bill or wrote anything claiming anything. There are other parties interested in the suit involved in some oil lands residing in Beaumont, who must have paid Collins. I know he went to Sherman, Texas, but know nothing of any other service in connection with the suit, and he never claimed to offset the note with his services. R. L. Autrey.'

"It was alleged that by each of said publications the defendant meant, and it was understood by all persons who read said statements to mean, that the statements so published and distributed by the defendant were true; that in addition thereto the defendant gave said note to one P. I. Hunter and other persons, who exhibited the same to the public as a genuine existing note; that each of said publications was distributed by means of and in the form of pamphlets, letters, and telegrams, and by exhibiting the note, as hereinbefore stated."

Then follow allegations as to the damages sustained.

The principal defense relied on was the truth of the matter published. The trial before a jury resulted in a verdict in favor of the plaintiff for $1,000 actual damages and $500 as exemplary damages.

The first assigned error is based upon the refusal of the court to give the following special charge: "You are instructed that if plaintiff executed his note to the defendant for money borrowed, payment of same could not be made or offset by services rendered by the maker thereof, unless such payment or offset was agreed to by the owner thereof. If, therefore, you believe from the evidence that plaintiff executed his note to defendant for $200 and afterwards sought to pay same with services as an attorney, such services would not in law amount to payment of said note without being agreed to by defendant, and you are therefore instructed that the note of plaintiff to defendant for $200 has not been paid." Applying this charge to the testimony, it in effect amounted to a peremp-

tory instruction to return a verdict for the defendant.

The appellee testified as follows: "I reside in Jefferson county, Tex., where I have been engaged in the practice of law since 1901, at Beaumont. I was in the active practice in 1905. There was pending, during that year, in the federal court at Beaumont, a suit involving title to a tract of land in Hardin county. It involved the Frank Milhome 177-acre tract of land at Batson. I bought this tract from old man Jos. Le Bleu, of Calcasieu parish, La., for Mr. Autrey, or it was represented to me it was for Mr. Autrey, and I took the deed in Mr. Autrey's name. * * * Soon after there was a suit brought in the federal court involving Mr. Autrey's title. We bought from old man Joe Le Bleu, who was the owner, as we construed the law, and the title was adverse to Mr. Autrey's title. The deed showed to have been made by Little Joe Le Bleu himself, and the question involved in the suit, and about the only question, was whether the Little Joe Le Bleu deed was adverse to Mr. Autrey's deed. The suit had been pending some time before I got into it. I do not know how long I had known Mr. Autrey before. I went to Houston to see Mr. Autrey about this suit some time after it was brought. Mr. Autrey and I went to his attorney's office, and I told his attorney, Mr. Jesse Andrews, of the firm of Baker, Botts, Parker & Garwood, all I knew about the heirship of Little Joe Le Bleu, and all that came to me from my investigation when I purchased the land for Mr. Autrey, and I am not sure, but I think it was while I was there in Houston that his attorney requested me to make this trip to Sherman to get a modification of certain orders that had been made by the court. Mr. Autrey and I did not go to Sherman together. He came back from Sherman when I did. We were on the train together all of the day from Sherman to Houston. It was when I got back to Houston, in Mr. Autrey's office, he requested me to make the trip to Louisiana with reference to the forged deed, and I said I had been out of my office several days, and I would have to have some money before I could go over there, and I gave him my 15-day note, and borrowed from him $200, and I went to Louisiana and made this investigation." After detailing his services in connection with his claimed employment by Mr. Autrey on the two trips to Louisiana, he further testified: "In a few days, I don't remember just what time, how long afterwards, I inclosed Mr. Autrey a bill for my services in that case. I don't know whether he ever received it or not. I sent it in a letter. I mailed it and sent him a bill for $200 for my services in the suit. I stamped the letter and mailed it. I never heard from Mr. Autrey from that day until this note was published here during the campaign in 1910. He never sent the note back, and I had forgot-

ten about the existence of the note. * * * Some time during the month of January, 1906, I rendered Mr. Autrey a bill for $200 for my services in the federal court case, and I never heard from Autrey and the note until that day, when Mr. Hunter exhibited it in San Augustine. * * * I paid that note in doing some of the best legal services I ever did in my life for a man in connection with a suit of Allen against Smith et al. in the federal court at Beaumont, the same suit about which I went to Sherman and to Louisiana, and in which the photograph referred to was taken. I am a practicing attorney, and I thought $200 a very reasonable fee for the services rendered by me in that suit. If my fee wasn't paid, as above stated, I never received any pay for my services. Mr. Autrey never made any demand for the payment of that note after I rendered those services. I never saw him in person, nor received a scratch of a pen from him from the time I rendered him a bill for my services until the time I came out for the state Senate. * * * I rendered Mr. Autrey a statement for the amount of $200. I don't know whether he received it or not." On cross-examination he testified: "It is my recollection that I made a trip to Sherman, and the $200 paid for my trip to Sherman and the trip to Louisiana. Mr. Autrey came back from Sherman with me, and while in Houston at that time he loaned me the $200. *We did not discuss at that time when and how this $200 was to be paid.* He did not make any reference at the time that he was due me something for the Sherman trip. * * * Mr. Autrey himself got me to go on that trip at Houston. I am not sure whether the arrangement was made in Mr. Autrey's office or in Jesse Andrews' office. Mr. Autrey defrayed my expenses on that trip, but the matter of expenses was not formally discussed. I don't remember that it was discussed at all as to who was to pay me. My mission on the trip to Lake Charles was to procure evidence of the forgery of a deed antagonistic to Mr. Autrey. * * * After the suit in the federal court was dismissed, I rendered my bill for $200 to Mr. Autrey, and have received no reply, and I did not then, nor at any time, make further demand for the note. Since the publication of the note I have not made demand of Mr. Autrey for it, and as to my preference to take chances on the libel suit, I thought I had the right in court. When I presented my bill to Mr. Autrey I requested the note to be returned, but in these 4½ years I did not have the note, and I had not thought about it."

[1, 2] In this state of the evidence it would have been improper for the court to have given the charge requested. While it is true the evidence conclusively shows that the note was not in fact paid in money and surrendered or marked "Paid," there was testimony from which the jury might have con-

cluded that the obligation evidenced by the note had been satisfied, and that each party to the transaction so considered it. If the letter which appellee says he wrote to the appellant was received by the latter, and its terms tacitly agreed to, that would have amounted to a satisfaction of the debt—in legal effect a payment—and the note should have been canceled or surrendered. The jury had a right to believe that the letter was written and properly addressed and mailed as testified to by the appellee, and that in due course of time it was received by the appellant at its destination. They also had a right to infer, from the failure of the appellant to thereafter present the note, or to in any manner demand payment, for more than four years after its maturity, that he had acquiesced in the terms of the communication above referred to, and had agreed to the settlement of the debt in the manner there proposed. It is seldom that one person will hold the subsisting obligation of another to pay money till it is barred by the statute of limitation, without making some effort to enforce its collection. It is not claimed by the appellant that the appellee was insolvent, or that there was any practical hindrance in the way of enforcing the collection of the note. So far as the record discloses, nothing existed which would excuse its presentation and a demand of payment, except the counterclaim referred to by the appellee. The first notice given of the continued existence of the note, after the lapse of more than four years, was its promiscuous circulation for the purpose of injuriously affecting the reputation and standing of the appellee in the senatorial district where he was a candidate for office. From all of these facts the jury had a right to reach the conclusion they did.

The court committed no error in the charges complained of in the second, third, and fourth assignments. The particular objections there made appear to be directed against the action of the court in submitting to the jury the issues of fact, upon the ground that there was no evidence to authorize it.

[3] The last assignment of error complains of the ruling of the court in excluding certain proffered testimony. The bill of exceptions fails to state what the objection to this testimony was, and for that reason it will not be considered. Ry. Co. v. Gage, 63 Tex. 568; G. C. & S. F. Ry. Co. v. Pearce, 43 Tex. Civ. App. 387, 95 S. W. 1133.

The judgment of the district court is affirmed.

### On Motion for Rehearing.

[4] The only question presented in appellant's motion for rehearing which was not considered in the original disposition of the case refers to a paragraph of the court's charge in which the court permitted the jury to consider publications made in the Beaumont Enterprise as a basis of liability. It is claimed that there were no allegations in the plaintiff's original petition which justified the submission of those publications as a ground of recovery. A more careful perusal of the petition has convinced us that the objection is not well taken. While in the main that instrument specifies in detail other characters of publication of the offensive documents, there are sufficient general allegations concerning the publications to include those specified in the charge. Moreover, this objection is not tenable because it is raised for the first time in the motion for a rehearing. It does not appear that it was called to the attention of the trial court or of this court in the original submission of the case.

The motion is overruled.